Filed June 18, 1891.

------◆------

### No. 16,130.

### HEILMAN ET AL. *v.* HEILMAN.

WILL.—*Construction.*—*Nature of Estate.*—A testator, after making specific devises to his children, bequeathed the rest of his property to his wife for life, and provided that after her death all his estate should be divided in equal shares among all his children, and that should any of his children be dead, and have left children, they should be entitled to the distributive share of their parents.

*Held,* that the children of the testator took a vested interest in the resi-

| | |
|---|---|
| 129 | 59 |
| 127 | 259 |
| 129 | 59 |
| 133 | 394 |
| 129 | 59 |
| 143 | 260 |
| 129 | 59 |
| 144 | 575 |
| 146 | 229 |
| 146 | 481 |
| 129 | 59 |
| 149 | 56 |
| 152 | 121 |
| 152 | 363 |
| 152 | 496 |
| 152 | 497 |
| 129 | 59 |
| 155 | 550 |
| 129 | 59 |
| 159 | 116 |
| 129 | 59 |
| 165 | 203 |

Heilman *et al. v.* Heilman.

due of his estate at the time of the death of the testator, the enjoyment of the same to be postponed during the life-estate of the wife.

SAME.— *Vesting of Estates.*—The law favors the vesting of estates and will construe the terms of a will as creating a vested estate, if possible.

SAME.— *Realty and Personalty.*—Where the same clause of a will operates on both real and personal property, if the bequest of real estate vests, the same construction will be applied to the personal estate.

SAME.— *Vested and Contingent Remainders.*—Where a life-estate is given to the widow by will, the fact that the will gives to the widow the unrestricted use of the personal property during life, and, with others, a power of disposition of the real estate, thus making it uncertain what property will remain to distribute at her death to the remainderman, does not render the remainder contingent.

SAME.—Where there is no other gift contained in the will than the direction to pay, distribute or divide the estate in the future, yet, if such payment, distribution or division appear to be postponed for the convenience of the estate, fund or property, which embraces a life-estate to another, the estate will be vested and not contingent.

From the Vanderburgh Circuit Court.

*C. A. De Bruler,* for appellants.

*J. E. Iglehart* and *E. Taylor,* for appellee.

MILLER, J.—This action involves a construction of the seventh clause of the will of William Heilman, deceased.

Several paragraphs of complaint and answer are contained in the record presenting the questions of its operation on real and personal property separately, but the construction we put upon the instrument renders it unnecessary to set out or further describe the pleadings.

The will is as follows:

" I, William Heilman, of Evansville, Vanderburgh county, Indiana, of sound mind and memory, do hereby make and publish my last will and testament, hereby revoking all other wills and testaments heretofore by me made:

" *First.*   I desire that all my just debts be paid out of my estate in the following manner:   That all my outstanding accounts and claims, and notes held by me at the time of my death, be first used in discharging said debts.

"*Second.*   I give and bequeath to my son George P. Heil-

man $10,000, in Louisville, Evansville and St. Louis consolidated 5 per cent. railroad bonds. Should I have parted or sold all said bonds, he is to have the market value in cash for said ten thousand bonds, whatever that may be, at the time of my death.

"*Third.* I bequeath to my son William Heilman one thousand shares ($50,000) of the capital stock in the Heilman Machine Works.

"*Fourth.* I bequeath to my son Frederick Carl Heilman twelve hundred shares ($60,000) of the capital stock of the Heilman Machine Works.

"*Fifth.* I bequeath and direct that my daughter, Mary Heilman Rosencranz, shall have lot nineteen (19), and the adjoining forty-six and one-quarter (46¼) feet of lot twenty (20) in the lower enlargement to the city of Evansville, with all the improvements thereon, for which she shall be charged $22,000 on her share of my estate.

"*Sixth.* To my dear wife, Mary Jenner Heilman, I give and bequeath all the rest of my property, real and personal, to be had and held by her during her natural life, and so long as she remains my unmarried widow. Should my said wife marry again, then she shall receive from my estate the amount and portion allowed her by law, and no more.

"*Seventh.* After the death of my dear wife all my estate, excepting the bequests herein made, shall be divided in equal shares. among all my children, and should any of my children be dead, and have left children, then they shall be entitled to the distributive share of their parents.

"*Eighth.* Should, at any time after my death, my executor, or executrix, find that it will be to the best interest of my estate that any part of real estate thereto belonging be sold, then my wife, Mary J. Heilman, together with my sons George P. Heilman and William A. Heilman, jointly, shall have the right to sell my real estate belonging to my estate, and by their deed shall have the right to sell and convey the title in fee simple of such real estate.

" *Ninth.* I hereby nominate and appoint my wife, Mary J. Heilman, executrix, without bond, of this my last will and testament."

The appellants, who are the children of George P. Heilman, who is a living son, and one of the residuary legatees of the testator, claim that the remainder limited upon the life-estate of the widow is a contingent one, which, upon the termination of the life-estate, will vest in such children of such testator as may be then living, and the children of any child who may have died after the death of the testator, and before the termination of the life-estate. The appellee, who, since the death of the testator, has purchased specific portions of the legacy of George P. Heilman, contends that the legacy to him became vested at the death of the testator, and asks that her title to the same be quieted as against his children.

If the interest of George P. Heilman in the residuum was a vested one, he had a right to sell and transfer it to the appellee, and vest in her a good title to the same. *Bunnell* v. *Bunnell,* 73 Ind. 163; *Fay* v. *Sylvester,* 2 Gray, 171.

We do not think it necessary to examine the distinction to be found in the books between the rules of construction of wills relating to personal property and those where real estate alone is concerned. It may well be doubted whether such distinction longer exists in this State, the paramount object in either case being to arrive at, as far as possible, the intention of the testator. In referring to a similar distinction claimed, this court, in *Holbrook* v. *McCleary,* 79 Ind. 167, says: " It is certain, we think, that the reason thus given for the supposed distinction has long since ceased to exist, if it ever existed, in this State. Here, the testator's will of personal estate must be executed with precisely the same solemnity and formality as the will devising real estate; and there is no perceptible or practical difference in the operation of a will upon personal estate and upon real estate."

In any event, inasmuch as the same clause of the will

operates on both real and personal property, if the bequest of real estate vests, the same construction will be applied to the personal estate. 2 Redfield Wills, 244 ; 2 Jarman Wills, 479 *n. g* ; *Jull* v. *Jacobs, L. R.* 3 Ch. Div. 703 ; *Farmer* v. *Francis,* 2 S. & St. 505 ; *Tapscott* v. *Newcombe,* 6 Jur. 755 ; *James* v. *Lord Wynford,* 1 Sm. & Gif. 40.

The devise to the widow, contained in the sixth clause of the will, gives to her a life-estate in all the property of the testator not specifically devised. By the seventh clause the ulterior interest in the property, upon the determination of the intervening estate, is given to or divided among his children, but should any of his children be dead leaving children, they are to take the distributive share of the parent.

The distinction between vested and contingent estates is thus given in 2 Redfield Wills, 218, 6 : "From a careful examination of this subject, it will be found, we think, that the question of vesting, or remaining contingent, depends upon whether the condition of the intervening estate determining, and the estate over taking effect, is one that must happen some time, and so as to give effect at some period to the second estate, or may never happen. If the former, then the second estate in remainder will always be regarded as vested. But in every case where the *existence* of the secondary estate is made dependent upon a contingency which may never happen, or never happen so as to allow of the vesting of the secondary estate, then the devise or bequest must be regarded as contingent, as well in its character as in regard to the time when it will come into operation."

The law favors the vesting of estates and will construe the terms of a will as creating a vested estate, if possible. *Harris* v. *Carpenter,* 109 Ind. 540. In *Amos* v. *Amos,* 117 Ind. 37, it is said : "We affirm, as an established principle, that the law not only favors the vesting of remainders, but it also presumes that words postponing the estate relate to the beginning of the enjoyment of the remainder, and not

to the vesting of that estate. *Davidson* v. *Koehler,* 76 Ind. 398; *Davidson* v. *Bates,* 111 Ind. 391; *Davidson* v. *Hutchins,* 112 Ind. 322."

In *Bruce* v. *Bissell,* 119 Ind. 525, this language is used: " It is familiar law that, in the absence of a clear manifestation of the intention of the testator to the contrary, estates shall be held to vest at the earliest possible period. The intent to postpone the vesting of the estate must be clear and manifest, and must, not arise by mere inference or construction. It is likewise well settled that ' The law will not construe a limitation in a will into an executory devise when it can take effect as a remainder, nor a remainder to be contingent when it can be taken to be vested.' *Doe* v. *Considine,* 6 Wall. 458 (475); *Amos* v. *Amos,* 117 Ind. 19; *Amos* v. *Amos,* 117 Ind. 37; *Harris* v. *Carpenter,* 109 Ind. 540; *Hoover* v. *Hoover,* 116 Ind. 498, and cases cited.

"An estate in remainder is not rendered contingent by the uncertainty of the time of enjoyment. The right and capacity of the remainderman to take possession of the estate, if the possession were to become vacant, and the certainty that the event, upon which the vacancy depends, must happen some time, and not the certainty that it will happen in the lifetime of the remainderman, determines whether or not the estate is vested or contingent.' "

A will takes effect and speaks from the time of the death of a testator, and survivorship often referred to and made a condition, turning point, or controlling event in the disposition of property by a will, generally, in the absence of an expressed or implied intention to the contrary, will be construed to refer to the time of the death of the testator. *Harris* v. *Carpenter, supra.*

In the light of these authorities we have arrived at the conclusion that the children of the testator took a vested interest in the residue of his estate at the time of the death of the testator, the enjoyment of the same to be postponed during the life-estate of the appellee. We are fortified in

this opinion by the result arrived at in the case of *Livingston* v. *Greene*, 52 N. Y. 118, in the construction of a will similar in all essential points, except that in that will the children are mentioned by name.

It is strongly contended by the appellants that the general rules in favor of the vesting of estates do not apply to this case, because of some special provisions that bring it within the exceptions to the general rules.

One of these is that the will gives to the widow the unrestricted use of the personal property during life, and, with others, a power of disposition of the real estate, thus making it uncertain what property would remain to distribute at her death.

This, of course, could only be considered as a circumstance bearing upon the intent of the testator, for it is not the uncertainty as to the *quantum* or condition of the estate, but uncertainty as to the persons to take, that would render the estate contingent. Neither the sale of the real estate and its conversion into personalty, nor its use, would prevent the estates of his children from vesting at the death of the testator. *Rumsey* v. *Durham*, 5 Ind. 71; *Bowen* v. *Swander*, 121 Ind. 164.

We are unable to draw any inferences from these circumstances of an intention to postpone the vesting of the legacies until the death of his widow.

The position is also taken, and authorities cited to sustain it, that, inasmuch as the will contains no language of gift to the children, but simply a direction after the death of the widow to divide the estate, it shows that the testator intended the period of distribution was to be not simply the time fixed for the enjoyment of the possession, but for the vesting of the estate itself.

We have examined the cases cited by the appellant upon this point, and find that, while the doctrine is well established, the courts are much more disposed to admit it as

a rule of law than to follow the rule. We do not con-
sider it necessary in this case, for reasons that will pres-
ently be stated, to enter at length into a discussion of the
limitations of this rule to be found in a multitude of cases.
We do not consider the rule referred to as being a fixed and
unbending rule for determining the vested or contingent
quality of estates; on the contrary, in the late case of *Reed's*
*Appeal,* 118 Pa. St. 215, the court says: "The gift of a
legacy under the form of a direction to pay at a future time,.
or upon a future event, is not less favorable to vesting than
a simple and direct bequest of a legacy at a like future time
or upon a like event. · The question is one of substance and
not of form, and in all cases it is whether the testator in-
tended it as a condition precedent that the legatees should
survive the time appointed by him for the payment of their
legacies; and the answer to this question must be sought for
out of the whole will, and not in the particular expression in
which the gift is made. *Leeming* v. *Sherratt,* 2 Hare, 14."
If this has become a rule of property so as to require this
court to follow it as a technical rule of construction, which
we do not decide, it can not affect the vesting of the estate
in the children of the testator at his death, because of excep-
tions to the rule itself.

One of these exceptions is, that where there is no other
gift contained in the will than the direction to pay, dis-
tribute or divide the estate in the future, yet, if such pay-
ment, distribution or division appear to be postponed for the
convenience of the estate, fund or property, which embraces
a life-estate to another, the estate will be vested and not con-
tingent. 2 Redfield Wills, 237, 37; 2 Williams Executors,
1344; 2 Jarman Wills, 450; *King* v. *Isaacson,* 1 Sm. & G.
371; *Smith* v. *Palmer,* 7 Hare, 224.

The reference to the grandchildren is one usually inserted
in wills, intended originally to prevent the lapsing of lega-
cies, but since the enactment of our statute, sections 2567 and
2571, R. S. 1881, seldom necessary. We do not regard

the insertion of this provision as of controlling effect in the construction of the instrument. The will under consideration, as we construe it, shows that the testator intended to bestow his whole estate upon his children, and that after making the specific legacies, he carved out of the remainder a life-estate for the benefit of the widow; in other words, that the enjoyment of the estate by the legatees was simply postponed to let in the life-estate.

While there are no general words of gift, except the provision to divide the estate, contained in the seventh clause, we take it that the statement in the fifth clause that the realty devised to Mrs. Rosencranz should be charged at a specific sum, " on *her share* of my estate," is some indication that she was individually and certainly to have a share of the residuum of his estate. This view is strengthened by the language used in the seventh clause, which gives to the children, not as a class, but to each one, a distinct title to his or her own share, which, in the case of Mrs. Rosencranz, it is expressly provided, is to be ascertained by deducting the value of her specific devise from her *pro rata* share.

As has been observed, the law favors the vesting of estates, and courts will so hold, unless there is something in the instrument showing clearly a contrary intention.

We find nothing in the language in this instrument to take it out of the general rule.

We find no error in the record, and, therefore, the judgment is affirmed.

Filed Sept. 15, 1891.