Sturgis *et al. v.* Work *et al.*

No. 13,838.

## STURGIS ET AL. *v.* WORK ET AL.

WILL.—*Construction.—Testator's Intention.—Description of Land.*—Where a testator devises to his two daughters a tract of land described as the "west half of the *southwest* quarter" of a certain section, township and range, which he never owned, owning instead the west half of the *northeast* quarter of the above-mentioned section, township and range, the devisees will not be permitted to show the facts as stated as a basis for the inference that the testator must have intended to dispose of the property actually owned by him, and that the description as found in the will was the result of inadvertence or mistake.

SAME.—*Elimination of Words and Phrases.—Court's Chancery Powers.*—The chancery powers of a court can not be invoked to reform a will by eliminating words or phrases and supplying others, so as to make the instrument conform to what may be supposed to have been the real intention of the testator.

SAME.—*Residue of Real Estate.—Disposition of by Will and Codicil.—Construction.*—One of the clauses of a will directed that the residue of the testator's real estate, not theretofore disposed of, should go to his two sons share and share alike, while the last clause (contained in a codicil) declared that all the residue of his estate, not therein specifically devised, should go to all his children share and share alike. The codicil referred to revoked certain devises and bequests, but made no disposition of real estate, except in the residuary clause.

*Held,* that the codicil controls the disposition of the undisposed-of residue.

SAME.—*Reduction of Devise to One.—Effect as to Others.*—Where a given number of acres to be taken from a tract of land are devised by one clause of a will to A., and by another the remainder is devised to B. and C., the modification of the devise to A. by a codicil subsequently executed diminishing it, the devise to B. and C. being left unchanged, adds nothing to that to B. and C.

From the Allen Circuit Court.

*T. E. Ellison* and *L. M. Ninde,* for appellants.

*P. A. Randall* and *W. J. Vesey,* for appellees.

MITCHELL, C. J.—Robert Work, late of Allen county, died testate on the 3d day of July, 1886. By his last will and testament, to which, after it was first executed, there were

added two codicils, he disposed of all his real and personal estate. One of the subjects of controversy arises out of the eighth clause of the will, by the terms of which the testator devised to his two daughters, Mary F. and Eliza J. Shoaff, an eighty-acre tract of land in De Kalb county, which is described as the " west half of the *southwest* quarter " of a certain section, township and range.

The testator never owned the tract described in the will, but did own and have, as part of his estate, the west half of the *northeast* quarter of the section, township and range above mentioned.

The devisees sought to show these facts, as a basis for the inference that the testator must have intended to dispose of the property actually owned by him, and that the description as found in the will must, therefore, have been the result of inadvertence or mistake. The ruling of the court below was adverse to the devisees upon this point. It is an established rule that the chancery powers of a court can not be invoked to reform a will by eliminating words or phrases, and supplying others, so as to make the instrument conform to what may be supposed to have been the real intention of the testator. *Funk* v. *Davis*, 103 Ind. 281 ; *Judy* v. *Gilbert*, 77 Ind. 96; *Sherwood* v. *Sherwood*, 45 Wis. 357 (30 Am. Rep. 757). The reason is, that an action to reform a written instrument is regarded as essentially an action for specific performance. A devisee is a mere volunteer ; the making of a will being a voluntary act, there is, therefore, no consideration to support the action, as in actions to reform deeds or contracts. " Volunteers under wills have no equity whereon to found a suit for specific performance." Wigram Wills, 47. Extrinsic evidence may be admitted in a proper case, where the effect of it is merely to explain or make certain what the testator has written, but such evidence is never admissible to show what the testator intended to write. If the testator had devised the land by some general description by which it might have been identified, as for example,

if he had said, "all my land" in a certain section or town-
ship, or "the lot purchased by me from A.," or "the tract
of land occupied by B.," and had then added an erroneous
particular description, a case would have been presented for
the admission of extraneous evidence within the rule which
holds, where there is a false description, either of the de-
visee or of the thing devised, if the will nevertheless contains
a sufficient general description of the person or thing, it will
take effect notwithstanding the erroneous particular descrip-
tion. *Cleveland* v. *Spilman,* 25 Ind. 95; *Winkley* v. *Kaime,*
32 N. H. 268; *Allen* v. *Lyons,* 2 Wash. C. C. 475; 1 Red-
field Wills, p. 585.

Extrinsic evidence is not admitted in any case, with a view
of reforming or adding anything to the will, but for the pur-
pose of arriving at the real intent of the testator, by identi-
fying the person or thing generally described, and to remove
the ambiguity resulting from the erroneous particular de-
scription. *Daugherty* v. *Rogers,* 119 Ind. 254.

It is said that courts should assume in every case, whether
there be a general description of the land devised or not, that
the testator intended to dispose of property of which he was
the owner, and that hence evidence ought to be admitted to
show that a description, as contained in the will, was a mis-
take, so as to prevent wrong and injustice. To do this would,
however, violate the fundamental principle, that a will, in
order that it may be regarded as the legal declaration of a
man's intention, which he wills to be performed after his
death, must be in writing, signed and witnessed, and that
the intention of the testator is always to be deduced from the
words actually written in the will. That which the statute
requires to be in writing can not be supplied by oral testi-
mony. In respect to this point there was no error in the
ruling of the court.

After making various specific devises of real estate, the
testator, in the instrument originally signed as his will, dis-
posed of what might remain in the following language:

"*Tenth.* The residue of my real estate, not heretofore disposed of, I give and devise absolutely in fee simple to my sons Wesley I. Work and Robert Carey Work, share and share alike."

By the terms of the second codicil to his will, the testator first revoked a devise of certain real estate made to one of his daughters, and directed that it should constitute a part of the residue of his estate. Certain absolute bequests and devises, theretofore made to his wife, were also modified and changed, so that in case of her marriage or death, the property devised and bequeathed to her was to become a part of the residue of his estate. This codicil closed with the following clause:

" I give, devise and bequeath to all my children, and their issue, share and share alike, all the residue of my estate not herein specifically devised and bequeathed."

A controversy arose over the two clauses of the will last above set out.

Accepting as correct the statement that all rules for the construction of wills are valuable only so far as they aid in ascertaining the testator's intention, the question is, can it fairly be said that the testator intended both of these residuary clauses to have effect?

The intention of the testator is to be collected from the entire will, and all papers which constitute the testamentary acts, including will and codicils, must be regarded as constituting the will. Schouler Wills, section 468. All these, no matter when actually written and signed, are to be considered as giving utterance to the testator's intention concerning the disposition of his estate, on the day of his death, thereby becoming in fact his last will and testament. We have, therefore, two clauses of a will, both of which took effect at the same moment, the first of which directed that the residue of the testator's real estate, not theretofore disposed of, should go to his two sons, share and share alike, while the last clause declared in language equally unequivocal, that all

the residue of his estate not therein specifically devised and bequeathed, should go to all his children, share and share alike. While it is true that a codicil is to be so construed as not to interfere with the disposition of property made in the will, to any greater extent than is required to give full effect to the codicil, it is also true that if any of the provisions of the codicil are repugnant to provisions contained in the will, the codicil is to be regarded as the expression of the testator's final determination upon the subject.

The general position is well supported that where the terms of the will are clear to give an estate, the words of a codicil must manifest an intent equally clear to revoke it. *Hearle* v. *Hicks,* 8 Bing. 475; *Quincy* v. *Rogers,* 9 Cush. 291. It is undoubtedly settled, too, that where an estate is given in one clause, in clear and decisive terms, the estate so given can not be taken away or cut down by any subsequent clause that is not as clear and decisive as the one in which the estate is given. *Bailey* v. *Sanger,* 108 Ind. 264; *Bruce* v. *Bissell,* 119 Ind. 525 (531), and cases cited; *Roseboom* v. *Roseboom,* 81 N. Y. 356; *Freeman* v. *Coit,* 96 N. Y. 63.

Neither of the clauses in question purports to be a devise of a particular estate, to the persons therein named. Both are residuary in character, and purport to be a description of any undisposed-of residue that may be owned by the testator when the will takes effect. " Residue means all of which no effectual disposition is made by the will, other than the residuary clause."

Formerly a testator was only permitted to devise the real estate which he actually owned at the time the will was made; but by statute (section 2567, R. S. 1881) after-acquired real estate may pass by a will, the same as that owned at the time of the execution of the will. Residuary clauses are employed more especially, so far as they relate to real estate, to dispose of after-acquired property, and to carry lapsed or void devises. Each of the clauses under consid-

eration purports to dispose of all the real estate owned by the testator not theretofore specifically devised. This, of course, meant all the real estate of which he might be the owner at the date of his death which had not been theretofore otherwise disposed of. Both clauses cover the same subject-matter. The first, in clear and decisive language, gives all the residue to the testator's two sons. The last, in language equally clear and decisive, gives the same subject-matter to all of his children, share and share alike.

It should be observed that substantially no real estate is devised or disposed of by the codicil in question except what may be disposed of by the last or residuary clause. The language used in the codicil must, therefore, be regarded as referring to the real estate specifically disposed of in the will. Both the will and the codicil come into operation and effect together, and together constitute the last will and testament. They can not be read as though the will spoke as of one date and the codicil of another; except, as we have already seen, in so far as they are repugnant to each other, the codicil must prevail, as being the "later and better thought," and final expression of the testator. In respect to the point here involved the court gave an erroneous construction to the will. The last clause must control the undisposed-of residue.

By the fifth clause of the will the testator devised to his daughter Sarah Ellen Hilligass one hundred and fifty acres of land, to be taken off the east side of a certain described tract, and by the seventh clause he devised to his son Wesley F. Work and Elizabeth Work, his daughter, all the remainder of the tract, except the one hundred and fifty acres theretofore devised to Mrs. Hilligass. By a codicil subsequently executed the testator modified the fifth clause of his will, so as to reduce the number of acres previously given to Mrs. Hilligass from one hundred and fifty to one hundred acres.

The seventh clause, in which the remainder of the tract, excepting one hundred and fifty acres as originally devised

to Mrs. Hilligass, was devised to Wesley F. Work and his daughter, was in no wise changed.

The question is whether the fifty acres taken from Mrs. Hilligass by the codicil were carried to Wesley F. and his daughter by force of the seventh clause in the will.   A negative answer must be given to this question.   The modification of the fifth clause by taking off fifty acres from the tract originally devised to Mrs. Hilligass, did not, without more, add anything to the seventh clause, which gave the remainder of the tract, excepting one hundred and fifty acres, to the parties therein named.

The rule is that where an estate is given to two, if the part given to one fail from any cause, that part, without a fresh disposition of it, will not go in augmentation of the part given the other, but will fall into the residue or go to the next of kin.   2 Jarman Wills, p. 368.

Where a tract of land or sum of money is given in specified proportions to two persons, we can discover no principle which would support the conclusion in case the share given one was diminished or entirely revoked, that it would, in the absence of some express words, go to the other.   Upon this point the court below fell into an error.

In respect to the other question suggested, involving the disposition of the money arising from the life insurance policy, the conclusion of the court was correct.   In so far as the conclusions of law stated by the court are not in accord with the foregoing opinion, the judgment is reversed, with costs, with directions to the court to restate its conclusions of law and to render judgment in consonance with this opinion.

Filed Nov. 26, 1889; petition for a rehearing overruled Feb. 8, 1890.