INDUSTRIAL TRUST COMPANY, *Tr. vs.* AUDLEY CLARKE *et al.*

OCTOBER 28, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill in equity for the construction of the will and codicil of Henry Audley Clarke, which has been certified to this court by the superior court under the provisions of general laws, 1923, chapter 339, sec. 35.

The testator died December 16, 1910, leaving him surviving five children, namely, Audley Clarke, Caroline M. Clarke, Harriet Clarke, Jessie F. Raymond, and Oskytel H. Clarke, all of whom, except Caroline M. Clarke, are living at present and are named respondents in this cause. Lulu E. Clarke, the wife of Audley Clarke, has also been named a respondent, because her husband has assigned any interest he may have in the estate to her.

The respondent Oskytel H. Clarke is under guardianship and is represented in this cause by his guardian *ad litem*, Kingsley L. Bennett, Esq., and the respondents Harriet Clarke and Jessie F. Raymond have entered no appearance in the cause and a decree *pro confesso* has been taken against them.

The testator's will and codicil were duly admitted to probate by the Probate Court of the City of Newport, and all of the testator's property has been disposed of thereunder in accordance with its provisions, excepting only those portions held in trust by the complainant for the said Caroline M. Clarke and the said Jessie F. Raymond under the sixth and seventh clauses respectively of paragraph four of the will. The decease of said Caroline makes necessary the disposition of the share of the estate held in trust for her, and the complainant seeks the advice of this court as to which of the surviving children are entitled to participate in the

distribution of this share, according to the terms of the will and codicil. In connection therewith two other questions also arise.

These three questions have been stated in the complainant's bill as follows: "1. Is Audley Clarke, the son of the testator, entitled under the terms of said sixth paragraph to any share in the personal property to be distributed by reason of the death of said Caroline M. Clarke?

"2. Should the trustee distribute to Jessie F. Raymond her share of the property held under the terms of the said sixth clause or should said share be retained in trust under the terms of the seventh clause of said will?

"3. Should the proceeds of the sale of real estate held under said sixth clause be distributed in the same manner as the balance of the personal property?"

It is agreed that if question 1 is answered in the affirmative, it will not be necessary to consider question 3, as in that event it then becomes of no importance whether or not said proceeds of the sale of the real estate are to be distributed in the same manner as the personalty.

We shall now proceed to consider question 1. Audley Clarke and Lulu E. Clarke contend that this question must be answered in the affirmative and the complainant expresses the same view though it does not contend for either an affirmative or negative answer but leaves the matter to the court. On the other hand, Oskytel H. Clarke, through his guardian *ad litem,* strongly contends that the language of the codicil precludes Audley Clarke from any further share in the estate of the testator, either directly or indirectly, than the amount bequeathed to him in the codicil. He urges that not only the codicil but the general scheme of the will itself supports his contention.

The will is set out in six paragraphs duly numbered. Paragraph 4 is further subdivided into eight separately numbered clauses. It is the sixth clause of this paragraph

which is erroneously referred to in question 1 above as the sixth paragraph of the will. In this opinion we shall consider that by the sixth paragraph therein is meant the sixth clause of paragraph 4.

Under paragraph 1 Audley Clarke was bequeathed such share of the estate as he would have been entitled to under the statute of distribution of intestate estates, which in this case the testator described in his will as one tenth of his estate. Several minor bequests to persons outside of the testator's immediate family are made in paragraphs 2 and 3. The residue of the estate is disposed of under paragraph 4. Paragraph 5 forbids any beneficiary under the will or the heirs of such from contesting the same on pain of losing his or her share of the estate, and paragraph 6 nominates the Industrial Trust Company as executor, and revokes all former wills.

Under paragraph 4, to Industrial Trust Company is devised and bequeathed all the residue of the estate for purposes set out in eight clauses. By the first clause, Harriet Clarke is given the family dwelling house with land and appurtenances situated in Jamestown, Rhode Island, for her natural life, subject to the performance of certain duties not here important to be stated, and subject to the right of the other children, except Caroline, to visit said premises and remain for a period of not more than two weeks in any calendar year without expense to said Harriet. The second clause provides that the trustee shall pay all taxes on the trust estate, except the real estate occupied by Harriet, and directs how such taxes shall be paid. The third clause directs the trustee, after paying taxes and its own charges, to pay over quarterly the income of the personalty in equal shares to Caroline M. Clarke, Harriet Clarke, Jessie F. Raymond and Oskytel H. Clarke. The fourth clause directs that the real estate is to be kept intact for ten years, and provides that the net income therefrom shall be paid in the

same manner as the income from the personalty to the children, except that Audley is included here as a beneficiary, whereas under the third clause he is excluded.

The fifth clause provides for the termination of the above trusts, except as to Caroline and Jessie, when the youngest of the children attained the age of twenty-one years, and further provides a method of distribution of the share of any child who should die before the trust terminated. Other than to indicate what the testator desired in the event of the death of any of his children during the trust period, this clause does not affect the present problem, inasmuch as the youngest child, Oskytel H. Clarke, became of age during the lifetime of the testator, and the estate was accordingly distributed at the death of the testator to his children, except Caroline and Jessie, whose shares were paid over to the trustee in accordance with the sixth and seventh clauses respectively, of paragraph 4 of the will. These two clauses read as follows:

"Sixth. Said trustee shall retain and hold one half of the remainder of said trust estate but in trust for the said Caroline M. Clarke for and during her natural life, to collect and pay over the net income, rents and profits (after paying taxes, insurance, repairs and commission) in quarterly installments to the said Caroline as long as she shall live for her sole use and benefit. At her decease, this trust shall terminate and said trustee shall pay and distribute all personal property, and convey all real estate, comprising said estate, in equal shares to my other said children, the issue of any deceased child taking by way of representation.

"Seventh. Said trustee shall retain and hold the other half of the remainder of said original trust estate but in trust for my daughter Jessie F. Raymond, wife of Philip L. Raymond, for and during the term of her natural life, to collect and to pay over the net annual rents, profits and income (after paying taxes, insurance,

repairs and commissions) in quarterly installments to the said Jessie F. Raymond, so long as she shall live, for her sole use and benefit.

"At her decease said trust shall terminate, and should she leave issue her surviving, said trustee shall pay and distribute all personal property and convey all real estate, comprising said trust estate, in equal shares to said issue; but if she leave no issue her surviving, then in equal shares to my other said children, the lawful issue of any deceased child taking by way of representation."

From the above summary, it is apparent that the testator had a definite plan in mind in distributing his estate and that he expressed this plan in his will with the aid of one skilled in the law. We shall assume, therefore, that where technical words are used they are to be given the technical meaning which they have in law. Looking at the whole will then, it is our opinion that, when the testator intended a specific thing to be done, he expressed that intention and did not leave it to implication. Apparently he desired Audley to have and enjoy his share of the personalty at once, and consequently the very first paragraph of the will makes a specific bequest to Audley, and the desire of the testator is expressed in the following words, "payment and transfer to be made as soon as it is practicable to do so after my decease." None of the other children are given the present enjoyment of their respective shares of the personalty, but only the income thereof until the youngest child attains the age of twenty-one years.

Moreover, not all of the children, even then, are to enjoy the principal of their legacies, as the shares of Caroline and Jessie, for some reason known to the testator and which he has not disclosed in his will, are continued in trust throughout their lives. At their deaths, he makes a definite and clear disposition of their shares. As to Caroline's share, it is to go "in equal shares to my other said children." As to

Jessie's, it is to go to her surviving issue, if any, otherwise "in equal shares to my other said children." Here the testator makes no distinction between his children; all are included. If he intended to restrict the number only to those included in the trusts of the personalty, he would have done so in some such manner as he did under the fifth clause when providing for the distribution of the share of Harriet and Oskytel, in the event of either of them dying during the lifetime of the trust. There he clearly expressed his intention in the following words: "And if either said Harriet or Oskytel die without leaving issue surviving, then the survivor of them shall take and receive of said personal estate such share as will be represented by a fraction whose numerator is one and whose denominator represents the number of my said children, Caroline, Harriet, Jessie and Oskytel as are then alive." It is significant that similar language is not used in the sixth and seventh clauses.

The respondent Oskytel H. Clarke, however, deduces from this intention of the testator to exclude his son Audley entirely from any benefit, either directly or indirectly, in the personalty in trust and to confine such benefit to the four children who are the named beneficiaries under the trust. This reasoning does not appeal to us. The plan of the testator as set out in the earlier clauses prior to the fifth clause was conditional upon the youngest child being under the age of twenty-one at the time of the testator's death and, upon its taking effect, it was limited in time to the minority of said youngest child. As the condition did not exist at the testator's decease, that plan did not become operative. The provisions of the fifth and later clauses, therefore, went into operation upon the testator's death. After the distribution then to be made was made, the real estate having been sold, there remained in operation only the sixth and seventh clauses, covering trusts for the benefit of Caroline and Jessie respectively. The testator does not in these clauses seek to discriminate among his children as to which of them shall participate in the final

distribution of his estate included in these trusts. On the contrary, he directs in clear and simple language that distribution shall be made to his other said children. If there is any doubt that Audley was to be included thereunder, that doubt, if it existed, is to be resolved in his favor.

We conclude, therefore, that the general scheme of the testator's will does not raise a necessary implication of exclusion of Audley from any share in the personal property to be distributed upon the death of Caroline M. Clarke. If such an intent to exclude Audley is to be found anywhere, it must be looked for in some place other than the will; and this brings us to a consideration of the codicil.

On June 15, 1909, almost two years after he had made his will, the testator executed the following codicil thereto:

"I, Henry Audley Clarke, of Newport, Rhode Island, having made my last will and testament in writing bearing date May tenth, in the year of our Lord, One Thousand Nine Hundred and Seven, in and by which, I have given and bequeathed to Audley Clarke of the City of Brooklyn, State of New York, a one fifth part of all my personal estate. Now therefore, I do by this writing which I hereby declare to be a codicil, to my said last will and testament, and to be taken as a part thereof, order and declare, that my will is that *only* the sum of Twenty Five Thousand Dollars ($25,000) shall be paid to the said Audley Clarke, *as the full amount,* bequeathed to the said Audley Clarke, and that the stock of the Bonner Brick Co., now held by me, shall form a part of that amount to the extent of its par value, four thousand dollars ($4000) which is to be paid to him in due course." (italics ours)

It is the above italicized language of the codicil upon which respondent Oskytel H. Clarke mainly relies in support of his contention that Audley Clarke is excluded from any share in the personal property to be distributed by the trustee on account of the death of Caroline M. Clarke. We

are of the opinion that respondent's contention is not sound, and that the cases cited by him as analgous to this one are not so analogous as he claims they are. This is not strange, as it has been said that "No will has a brother", and that statement is literally true.

To discuss the authorities cited by the respondent and indicate their points of differentiation from the instant case would unnecessarily lengthen this opinion. We shall not discuss them but merely observe that the facts in all the cases cited are so dissimilar that they furnish no assistance to us in the problem presented by the case at bar. With the general principles of law laid down therein with reference to the proper construction of the will and the codicil, we are not in disagreement and indeed shall cite some of them here to our purpose.

It is fundamental that the codicil and the will must be read together as one instrument, and consideration must be given to both instruments to learn the intention of the testator. *Rhode Island Hospital Trust Co.* v. *Calef,* 43 R. I. 518. The codicil is a part of the will, but, if it revokes any part of the original instrument, that part must be stricken from the will. An express revocation in the codicil is not necessary to make the testator's intent to revoke clear. "It is sufficient, that the intent to make a disposition of the estate which is inconsistent with the prior gift, is made as clear as the original gift." *Derby* v. *Derby,* 4 R. I. 414 at 429. Or, as it is sometimes stated, if any part of the will is repugnant to the provisions of the codicil such part must yield to the codicil. *Sturgis* v. *Work,* 122 Ind. 134, 22 N. E. 996. But the court will, if possible, seek to reconcile the apparent inconsistency and endeavor not to disturb the first disposition further than is necessary to give effect to the second. *Frelinghuysen* v. *New York Life Ins. Co.,* 31 R. I. 150. See also *Lamb* v. *Lamb,* 11 Pick. (Mass.) 371.

In the case before us there is no irreconcilable inconsistency between the will and the codicil, except as to paragraph 1, setting out the original bequest to Audley Clarke.

The codicil expressly alters the form and substance of the bequest. It also alters the manner of its payment. Under the codicil the bequest is for a specific amount to be paid partly in shares of stock valued at the par value of said stock. Under the will the bequest is for a fractional part of the testator's personalty, determinable according to the law of distribution, and there is no reference to payment in part in shares of stock. Plainly these two provisions are repugnant. Both cannot stand, so the provision made in the will must give way.

But where in any other part of the will can we find anything that is repugnant to the disposition made in the codicil? We search in vain for such a repugnancy. Indeed the codicil, by its very terms, obviously confines its operative effect to paragraph 1 of the will and does not look beyond it. That such was the intention of the testator appears to us clear. In the opening sentence of the codicil, he refers expressly to the bequest which he has made to Audley in paragraph 1 of his will, and then he proceeds to make the new disposition and is careful to specify that only the amount set out therein shall be paid to Audley as the full amount *bequeathed* to him. By this language the danger of this new bequest being construed as supplementary to the original rather than in substitution thereof is indisputably avoided. Having accomplished this purpose, the testator does not attempt in any manner by further language to do more.

To seek by construction to extend the codicil further to other parts of the will is not necessary to make effective the testator's intention to revoke his original bequest in paragraph 1, and it is otherwise not proper or permissible to do so. The codicil should not be allowed to vary or modify the will, unless such is the manifest intention of the testator. *Frelinghuysen* v. *New York Life Ins. Co., supra.* Certainly the codicil here discloses no manifest intention on the part of the testator to exclude Audley from benefiting indirectly under the sixth clause of paragraph 4 of the will

upon the death of Caroline. To warrant implying such an intention, from the language of the codicil taken in connection with or in relation to other language in the will, the occasion for such an implication must be clear and certain. *Webb* v. *Carpenter,* 16 R. I. 68, 69. We fail to see any occasion of this kind in the case at bar. Only by an unwarranted straining of the language of the codicil far beyond its necessary import could such an occasion be presented here.

We are, therefore, of the opinion that question 1 should be answered in the affirmative. In view of this conclusion, question 3 will not be considered.

The second question raised by the bill is whether the trustee should distribute to Jessie F. Raymond her share of the property to be distributed under the sixth clause, by reason of the death of Caroline, or whether said share shall be retained under the seventh clause of the will. It is apparent from the seventh clause that it was the intention of the testator that the share of Jessie in his estate should be held in trust for her during her lifetime. But, under the sixth clause, in accordance with the plan of distribution of his estate adopted by the testator, there was clearly the contingency that Jessie would share indirectly in the distribution of Caroline's share, and in the face of such a contingency, which we must assume the testator foresaw, he has provided a method of distribution which includes Jessie as a possible beneficiary and yet he does not indicate that she is to be treated in this instance in any manner different from his other said children. It may be that while he desired to keep from Jessie the full enjoyment of her share of his estate which he had provided for her directly, he was not averse to her receiving the full enjoyment of any share coming to her indirectly in the event of her surviving Caroline. Inasmuch as we cannot find from the will any clear and positive intention to the contrary, we are of the opinion that the specific direction to the trustee, contained in the sixth clause, that "said trustee shall pay

and distribute all personal property, and convey all real estate, comprising said estate, in equal shares to my other said children", should be complied with in the same manner to all of said children. We, therefore, answer question 2 to the effect that Jessie F. Raymond should personally receive her said share.

On November 5, 1937, the parties may present to this court a form of decree in accordance with this opinion to be entered in the superior court.

*Huddy & Moulton,* for complainant.
*Albert A. Baker, Baker & Spicer,* for respondents.
*Kingsley L. Bennett,* Guardian *ad litem.*